UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN HAGAN, | ) | Case No. 1:06CV2507 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER BOYKO |
| vs. | ) | (Magistrate Judge McHargh) |
| | ) | |
| CITY OF CLEVELAND,  et al., | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM |
| | ) | AND ORDER |

McHARGH, Mag.J.

Before the court is Plaintiff's motion for discovery.  (Doc. 14.)

The plaintiff Brian Hagan ("Hagan"), administrator of the estate of Laray

Renshaw ("Renshaw" or "the decedent"), has filed an action under 42 U.S.C. §§

1983, 1985, and 1988, against defendants City of Cleveland ("the City"), Officer

John T. Franko ("Franko"), and John Does 1-50.  (Doc. 9, Amended Complaint.)

The complaint contains seven counts, namely, 1) an action under 42

U.S.C. § 1983, alleging an excessive use of force; 2) failure of the City to train

and supervise its police officers; 3) wrongful death, pursuant to Ohio Rev. Code

§§ 2125.01-2125.03; 4) survivorship; 5) willful, wanton, and reckless conduct; 6)

assault and battery; and 7) spoliation of evidence.  The complaint arises from

2

the shooting death of Hagan, allegedly at the hands of defendant Cleveland

police officer Franko.

Officer Franko has moved for summary judgment, in part on the basis of

qualified immunity.  (Doc.  13, at 6, 10-13.)  In response, Hagan has filed a

motion for discovery to respond to Franko's assertion of qualified immunity.

(Doc. 14.)

Specifically, Hagan outlines the following requests, which he asserts he

"reasonably needs to file his opposition to Franko's motion."  (Doc. 14, at 1.)

Hagan argues that the only way he can oppose the motion is "to engage in

discovery the focus of which is geared to reveal the 'totality of the

circumstances.'"  Id. at 4.  On that basis, Hagan outlines the following requests:

> LaRay Renshaw is dead and a complete analysis of the facts and
> inferences in the 546 pages of the Use of Deadly Force
> Investigation Team reports are logically the best starting point.
> Those facts are voluminous.
>
> The following individuals whose names are contained in the 546
> pages of records are necessary witnesses to this tragic shooting,
> and Renshaw seeks to depose them all.  They are: Dr. Balraj who
> signed the Coroners Verdict and the Report of Autopsy (see exhibit
> 1); the pathologist who performed Renshaw's autopsy believed to
> be Dr. Galetka (see exhibit 2) ; Amanda Jenkins the Coroner's
> toxicologist who performed toxicology studies of LaRay Renshaw's
> blood (see exhibit 3) ; Curtiss Jones, the Coroner's trace evidence
> scientist, who participated in the acquisition, handling and
> analysis of trace evidence in this case and who produced a sixteen
> page report (see exhibit 4); Carey F. Martin, the Coroner's DNA
> scientist who produced a two page report (see exhibit 5); Charles
> Teel and Alan Clark who were the Coroner's investigators that
> produced written reports (see exhibit 6); George Geletka from the
> Coroner's office because he produced a written report and as noted,
> performed the autopsy (see exhibit 6); any other individual from

3

the Coroner's office who participated in the autopsy, handling of evidence and/or who interviewed witnesses, as well as the witnesses interviewed; the technicians, officers, and detectives who processed the shooting scene and conducted the follow up investigation; each individual listed on the "Crime Scene Entry Log" because each of these individuals is an eyewitness (exhibit 7) ; each Use Of Deadly Force Investigation Team ("UDFIT") Investigator including Detectives Hassan and Beaman who wrote reports and personally led the UDFIT investigation (see exhibit 8); Ross Steinberg, the head of the Office of Professional Standards ("OPS") who observed the scene, took notes and produced a three page report (see exhibit 9); all eyewitnesses at the scene including Franko's supervisor and Officer In Charge ("OIC"); Officer Franko's partner, Officer Joseph Wright, a witness who provided a statement see exhibit 10); Officer Richard Pollack, a witness who provided a statement to the Cleveland Police Homicide Department or Unit about the shooting (see exhibit 11); Detective Veverka, a member of the UDFIT who interviewed witnesses and took statements from those witnesses (see exhibit 12) ; Detective Joseph Choknowsko who is an UDFIT investigator that conducted interviews and took witness statements (see exhibit 13); Detective Timothy Entenok, an UDFIT investigator who conducted interviews and took witness statements (see exhibit 14); UDFIT Detective Sampson (see exhibit 15); Lieutenant Joseph Petkac (exhibit 15); Officer Franko (see Exhibit 16), as well as any other witnesses whose identity is revealed via these depositions or paper discovery.

As discussed in <u>Griffith</u>, training and statewide training standards are relied upon by courts in their excessive force analyses. Determining reasonableness is a function of identifying the standards that apply to the reasonable officer. Counsel for decedent Renshaw needs to take the deposition from that person at the Ohio-approved Cleveland Police Academy who is most knowledgeable about Use of Force Training and Building Searches, and will need a complete copy of Franko's training records and Franko's entire personnel and other non-medical files.

* * * * *

Renshaw's experts will require access to all evidence collected including bullets, bullet casings, bullet fragments, weapons, clothing DNA, pathology slides, original toxicology studies as well

4

as the Talk Group Radio Log which provides almost exact time, in minutes and seconds, when officers report in to dispatch and when they arrive and leave the shooting scene. The Talk Group Radio Log contains information that is critical to determining the overall reasonableness of Franko's actions because not only does it identify times, it identifies the officers who are calling dispatch. An issue relating to the reasonableness of Franko's actions is the location of his backup at the time of the shooting. The officers' identities and the times they reported to dispatch will enable the Plaintiff to ultimately identify which officers were located near to or inside of the building with Officer Franko.

Renshaw requires the freedom to depose the witnesses identified in the 546 pages of investigatory information. Before such depositions occur, Renshaw requires complete responses to interrogatories and document requests because that information will be used during the depositions. One request Renshaw will seek in paper discovery are Form 1s (officer's explanations of their activities in connection with an incident or arrest) of all officers who have been involved in arrests involving entering a building a suspect has entered. This discovery will provide a basis to understand whether Franko's actions when he killed Renshaw were "reasonable" or whether Franko acted contrary to his training or contrary to actual standard practice.

(Doc. 14, at 6-9.)

Franko opposes the motion, arguing that "full-blown discovery" would deprive him of the benefits of qualified immunity.  (Doc. 17, at 1.)  He asserts that Sixth Circuit precedent "limits the qualified immunity inquiry to those events immediately before the use of deadly force."  Id. at 1 n.2 (citing Dickerson v. McClellan, 101 F.3d 1151, 1161 (6th Cir. 1996), and Burnette v. Gee, No. 04-5551, 2005 WL 1513107 (June 21, 2005), cert. denied, 126 S.Ct. 739 (2005)). Therefore, Franko argues that any discovery at this point should be limited to

5

"the events within the stairwell immediately before Franko's use of force." Id. at 1-2.

Moreover, since Hagan has already received the 546-page investigative file, Franko contends that Hagan should be able to support his discovery requests with some "good faith basis" to contest Franko's assertion of qualified immunity. Id. at 5-6.

Hagan responds that Franko has not objected to specific witnesses or evidence. (Doc. 18, at 1.) However, the burden to defeat an assertion of qualified immunity rests with the plaintiff, as discussed below. It is plaintiff's burden to establish the suitability of any discovery sought. For example, Hagan argues that all of the forensic evidence would be relevant, insofar as that evidence would aid a determination of how Renshaw was shot. Id. at 6.


DOCTRINE OF QUALIFIED IMMUNITY

The issue of qualified immunity must be addressed at the earlier possible point in the litigation. Saucier v. Katz, 533 U.S. 194, 200-201 (2001); Siegert v. Gilley, 500 U.S. 226, 232 (1991). The Supreme Court has stated that, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." Harlow v. Fitzgerald, 457 U.S. 800, 818-819 (1982). The Court has clarified that the inquiry regarding qualified immunity is distinct from the merits of the excessive force claim itself. Saucier, 533 U.S. at 204; Dunigan v. Noble, 390 F.3d 486, 491 n.5 (6th Cir. 2004).

6

A government official who is performing a discretionary function is entitled to qualified immunity from suit[1] as long as his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Painter v. Robertson, 185 F.3d 557, 567 (6th Cir. 1999) (quoting Harlow, 457 U.S. at 818).  In other words, any "objectively reasonable" action by a state officer, as assessed in the light of clearly established law at the time of the conduct at issue, will be protected by qualified immunity.  Painter, 185 F.3d at 567.  Qualified immunity is a purely legal question which must be determined early in the proceedings.  Saucier, 533 U.S. at 200; Siegert, 500 U.S. at 232.

The defendants bear the initial burden of coming forward with facts which suggest that they were acting within the scope of their discretionary authority at the time in question.  Rich v. City of Mayfield Heights, 955 F.2d 1092, 1095 (6th Cir. 1992).  (The defendants here have met their initial burden: it is uncontested that the police officers were acting in their official capacities.)

The burden then shifts to the plaintiff.  The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity.   Untalan v. City of Lorain, 430 F.3d 312, 314 (6th Cir. 2005); Cartwright v. City of Marine City, 336 F.3d 487, 490-491 (6th Cir. 2003) (citing Rich, 955 F.2d at 1095); Hamilton v. Myers, 281 F.3d 520, 531 (6th Cir. 2002).

---

[1]Qualified immunity is an immunity from suit, rather than a mere defense to liability.  Saucier, 533 U.S. at 200; Dunigan, 390 F.3d at 490.

7

Upon the assertion of qualified immunity, the plaintiff must put forward "specific, nonconclusory factual allegations" that would defeat the immunity. Siegert, 500 U.S. at 236 (Kennedy, J., concurring).

The Supreme Court directs that the plaintiff must establish two factors to show that the defendants are not entitled to qualified immunity from suit: 1) that the facts as alleged show a violation of a constitutional right, and 2) that the right violated was clearly established.  Saucier, 533 U.S. at 201; Livermore v. Lubelan, 476 F.3d 397, 403 (6th Cir. 2007) (two-tiered inquiry); Griffith v. Coburn, 473 F.3d 650, 656 (6th Cir. 2007) (two-pronged inquiry); Smith v. Cupp, 430 F.3d 766, 773 (6th Cir. 2005); Dunigan, 390 F.3d at 491.  The threshold inquiry is this:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201.  If the allegations would establish no violation of a constitutional right, then it is unnecessary to inquire further.  Saucier, 533 U.S. at 201.

On the other hand, if the factual allegations favorably viewed show a violation, the next step is to determine whether the right was clearly established.  This inquiry "must be undertaken in light of the specific context of the case, not as a general broad proposition."  Id.  The relevant inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Brosseau v. Haugen, 543 U.S. 194, 199 (2004); Saucier, 533 U.S. at

8

202. If the law does not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Saucier, 533 U.S. at 201.

"In other words, where a constitutional violation exists, an officer's personal liability turns on the 'objective legal reasonableness' of the action in view of the circumstances the officer confronted assessed in light of 'clearly established' legal rules." Dunigan, 390 F.3d at 491 (citing Saucier, 533 U.S. at 202; Anderson v. Creighton, 483 U.S. 635, 639 (1987)).


DISCOVERY AND QUALIFIED IMMUNITY

The Supreme Court has stated that, until the qualified immunity question is resolved, "discovery should not be allowed. " Harlow, 457 U.S. at 818-819. See also Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (district court should resolve immunity question before permitting discovery); Goad v. Mitchell, 297 F.3d 497, 504 (6th Cir. 2002). Indeed, one of the core purposes of the immunity is to shield officials from "the burdens of broad-reaching discovery." Crawford-El, 523 U.S. at 588 (quoting Harlow, 457 U.S. at 817-818).


However, the Court has recognized that the discovery issue is "somewhat more complicated" than that. Anderson, 483 U.S. at 646 n.6. There is not an immunity from all discovery: "limited discovery may sometimes be necessary

9

before the district court can resolve a motion for summary judgment based on qualified immunity." <u>Crawford-El</u>, 523 U.S. at 593 n.14.

First, this court must determine whether the actions that the plaintiffs allege the officer to have taken are "actions that a reasonable officer could have believed lawful." <u>Anderson</u>, 483 U.S. at 646 n.6.  If so, the officer is entitled to dismissal prior to discovery.  If they are not,

> . . . and if the actions [the officer] claims he took are different from those [the plaintiffs] allege (and are actions that a reasonable officer could have believed lawful), then discovery may be necessary before [the officer's] motion for summary judgment on qualified immunity grounds can be resolved.  Of course, any such discovery should be tailored specifically to the question of [the officer's] qualified immunity.

<u>Anderson</u>, 483 U.S. at 646 n.6.  In such a situation, the court "should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took." <u>Crawford-El</u>, 523 U.S. at 600.

This initial inquiry concerning the possibility of discovery on the question of qualified immunity is similar to the first step, the "threshold question," in the qualified immunity analysis itself:  "Taken in the light most favorable to the party asserting the injury, do the *facts alleged* show the officer's conduct violated a constitutional right?" <u>Saucier</u>, 533 U.S. at 201 (emphasis added). <u>See, e.g.</u>, <u>Crawford-El</u>, 523 U.S. at 598 (court must determine whether, assuming truth of plaintiff's allegations, official's conduct violated clearly established law).

10

The complaint makes the following factual allegations:  Hagan alleges
that Officer Franko and another officer approached the decedent, Renshaw, and
Renshaw ran away.  (Doc. 9, Am.Compl., at ¶ 9.)  Franko then pursued
Renshaw as he ran through yards, over a fence, and into an apartment building.
Id. at ¶ 11.  Renshaw may have lost his shirt scaling the fence.  Id.  Franko
followed him into the building.  "It is believed that Defendant Franko entered
the building with his gun drawn.  Defendant Franko did not wait for backup to
assist despite other police officers being in the area."  Id. at ¶ 13.  The
allegations continue:

> Once inside the building Defendant Franko deliberately intended
> to confront Mr. Renshaw with his firearm in his hand.  He
> deliberately confronted and engaged Mr. Renshaw, shot him
> multiple times and killed him.  At this point in time there was still
> nothing in Mr. Renshaw's hands and he was not clothed from the
> waist up.

Id. at ¶ 15.

In an affidavit attached to his motion for summary judgment, Franko
avers that the two officers observed what they believed to be a drug transaction.
(Doc. 13, DX A, Franko aff., at ¶ 3.)  Renshaw fled, and Franko and other
officers searched the area for him.  Id. at ¶ 4.  As Franko approached an
apartment building, he heard the front door click shut, and then heard someone
running up the stairs.  Id. at ¶ 5.  Franko began to climb the stairs, and as he
passed the second landing, he saw Renshaw "lying face down on the third

11

landing and watching me through the spindles of the railing." <u>Id.</u> at ¶ 6.

Franko continues:

> 7.  I identified myself as a police officer.  I had my service weapon
> drawn and I ordered the male to stay on the floor and to show me
> his hands.  Despite this order, Renshaw got up and stood on the
> third landing.  I ordered Renshaw to get back on the floor, but he
> continued to stand on the third landing.

> 8.  Despite my orders to Renshaw, he then bounded down the
> stairs to the second landing and began to struggle with me.  My
> service weapon was in my right hand and Renshaw had grabbed
> my right wrist with his left hand.

> 9.  Renshaw fought to gain control of my service weapon and
> grabbed the gun.  I was in fear of imminent danger believing
> Renshaw intended to use the weapon against me.

> 10.  The struggle with Renshaw, from the time he lunged at me
> from the third floor landing until shots were fired, lasted only a
> matter of seconds.

<u>Id.</u> at ¶¶ 7-10.

Clearly, then, the actions that Franko avers he took are different from
those alleged by Hagan.  The issue then becomes whether the actions that
Hagan alleges the officer to have taken are "actions that a reasonable officer
could have believed lawful." <u>Anderson</u>, 483 U.S. at 646 n.6.  Essentially, Hagan
argues that Franko  violated Renshaw's constitutional rights by fatally shooting
him, despite the fact that he was a fleeing, unarmed suspect who posed no
threat to the officer.

The Supreme Court has held that the Fourth Amendment's ban on
unreasonable seizures is the basis for the right to be free from the use of

12

excessive force during an arrest or investigatory stop.  <u>Ingram v. City of</u> <u>Columbus</u>, 185 F.3d 579, 596 (6th Cir. 1999) (citing <u>Graham v. Connor</u>, 490 U.S. 386 (1989)).  The Court addressed the issue of deadly force in <u>Tennessee v.</u> <u>Garner</u>, stating:

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. . . . Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.  . . .  A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.
>
> * * * * *
>
> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.  Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

<u>Tennessee v. Garner</u>, 471 U.S. 1, 11-12 (1985).  <u>See also</u> <u>Dickerson</u>, 101 F.3d at 1163).

If Officer Franko believed that Renshaw had grabbed his gun and tried to gain possession of it, "a reasonable officer would infer a substantial possibility that he was fighting for his life."  <u>Billington v. Smith</u>, 292 F.3d 1177, 1185 (9th Cir. 2002). Where a suspect threatens a police officer, or another person, with serious physical harm or death, deadly force is justified in self-defense or

13

defense of another person.  <u>Brosseau</u>, 543 U.S. at 197-198; <u>Dickerson</u>, 101 F.3d
at 1163 (citing <u>Garner</u>, 471 U.S. at 11-12).

Viewing the allegations in the light most favorable to Hagan,
<u>Crawford-El</u>, 523 U.S. at 598; <u>Dickerson</u>, 101 F.3d at 1154 n.2, there would be
a constitutional violation because Officer Hagan used deadly force against a
fleeing suspect who did not pose a threat of serious physical harm.  In that
scenario, a reasonable officer could not have believed the use of deadly force to
be lawful.

Thus, the court finds that "limited discovery" is necessary before the
merits of Franko's  motion for summary judgment on qualified immunity
grounds can be resolved.  <u>Crawford-El</u>, 523 U.S. at 593 n.14.  The Supreme
Court has instructed that such discovery should be tailored specifically to the
question of the officer's qualified immunity.  <u>Anderson</u>, 483 U.S. at 646 n.6.
The court should limit discovery to those  issues that bear upon the qualified
immunity defense, "such as the actions that the official actually took."
<u>Crawford-El</u>, 523 U.S. at 600.

Whether the officer's use of force was reasonable depends on "the facts
and circumstances of each particular case, including the severity of the crime at
issue, whether the suspect poses an immediate threat to the safety of the
officers or others, and whether he is actively resisting arrest or attempting to
evade arrest by flight."  <u>Smith</u>, 430 F.3d at 774 (quoting <u>Graham</u>, 490 U.S. at
396); <u>Dunigan</u>, 390 F.3d at 493.  In particular, the reasonableness of the

14

officer's decision depends on the officer's "knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force." <u>Cowan ex rel. Estate of Cooper v. Breen</u>, 352 F.3d 756, 762 (2nd Cir. 2003) (quoting <u>Salim v. Proulx</u>, 93 F.3d 86, 92 (2d Cir. 1996)). <u>See, e.g.</u>, <u>Graham</u>, 490 U.S. at 396-397 ("police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation"). <u>See also</u> <u>Livermore</u>, 476 F.3d at 407 (citing cases); <u>Burnette</u>, 2005 WL 1513107; <u>Dunigan</u>, 390 F.3d at 494; <u>Dickerson</u>, 101 F.3d at 1161-1162 (citing cases).

Hagan suggests that Franko "himself is responsible for creating an unnecessary tactical dilemma," by entering the building alone in pursuit of Renshaw.  (Doc. 14, at 3.)  However,  the reasonableness of the seizure concerns "whether the force used to effect that seizure was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create the circumstances." <u>Dickerson</u>, 101 F.3d at 1161 (quoting <u>Carter v. Buscher</u>, 973 F.2d 1328, 1332 (7th Cir. 1992)).  The constitutional violation alleged here is excessive (deadly) force, not an improper pursuit, nor an arguably ill-advised decision to enter a building in pursuit, without backup assistance.  "While courts have considered an officer's prior actions in their analysis of the reasonableness of the officer's subsequent actions towards a suspect, courts have only done so where the prior actions involved excessive force or brutality against the suspect." <u>Burnette</u>, 2005 WL 1513107.

15

<u>Discovery sought by Hagan</u>

Here, the crime suspected by the police was possession or sale of drugs, and Renshaw was apparently attempting to evade further investigation or arrest by flight.  What is contested is whether Renshaw posed an immediate threat to the safety of Officer Franko, or whether he was actively resisting arrest, at the time of their confrontation on the apartment building stairway. No eyewitnesses (other than Franko) to the shooting itself are known to exist.

The specific discovery as sought by Hagan cannot be characterized as "limited."  Although Hagan acknowledges that an investigation into the shooting resulted in a Use of Deadly Force Investigation Team report, Hagan apparently seeks to reconstruct that entire investigation step-by-step.  Thus, he seeks to depose at least 23 individuals, but only after "complete responses to interrogatories and document requests because that information will be used during the depositions."  (Doc. 14, at 9.)  For example, although there is a Coroners Verdict and Report of Autopsy, Hagan seeks to depose the coroner, the pathologist who performed the autopsy, the toxicologist, two coroner's investigators who produced written reports, as well as "any other individual from the Coroner's office who participated in the autopsy, handling of evidence and/or who interviewed witnesses, as well as the witnesses interviewed."  <u>Id.</u> at 6-7.

Hagan acknowledges that he has already received relevant evidence from the defendants through an open records act request.  <u>Id.</u> at 5-6.  Hagan has not

16

identified which of the findings of the internal investigation or the coroner's verdict he is questioning.  He has not clarified what evidence he knows or suspects is missing, nor what evidence he suspects has been misinterpreted.

The court finds that limited discovery into facts underlying the assertion of qualified immunity is appropriate.  That discovery shall be limited to that evidence which would directly relate to the disputed events on the stairway that led to Renshaw's death.  In other words, discovery shall be limited to that which would shed light on the factual basis supporting (or not) Officer Franko's assertion of the necessity of the use of force at that point, such as the forensic evidence, the autopsy, evidence that would indicate the location of the parties at the time of the shooting, and so forth.

Hagan is directed to narrow his discovery requests in light of this ruling, and to  propound such amended requests to the defendants.  The parties are reminded to  address any discovery disputes which may arise in accordance with the Federal Rules of Civil Procedure and Local Rules 26.1 and 37.1.

The motion for discovery (doc. 14) is granted in part, and denied in part, as discussed above.

IT IS SO ORDERED.

March 22, 2007                           /s/ Kenneth S. McHargh
                                         Kenneth S. McHargh
                                         United States Magistrate Judge